NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

ALICIA LOREN BREVETTI, *Petitioner/Appellant*,

*v.*

FRANCESCO GERARDO BREVETTI, *Respondent/Appellee*.

No. 1 CA-CV 21-0569 FC
FILED 7-20-2023

Appeal from the Superior Court in Maricopa County
No. FC2020-093239
The Honorable John L. Blanchard, Judge

**AFFIRMED**

APPEARANCES

Alicia Loren Wharton, Phoenix
*Petitioner/Appellant*

Law Offices of Matthew S. Schultz, P.C., Tempe
By Matthew S. Schultz
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Chief Judge David B. Gass delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Cynthia J. Bailey joined.

---

**G A S S**, Chief Judge:

¶1        This appeal involves the superior court's rulings on two post-decree petitions: (1) father's amended petition to move the parties' two children to California with father, and to modify legal decision making, parenting time, and child support; and (2) mother's petition to enforce child support and arrears, spousal maintenance and arrears, medical insurance coverage, and medical expense reimbursement. Because the record supports the superior court's rulings, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This court views the facts in the light most favorable to affirming the superior court. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283 ¶ 14 (App. 2019).

¶3        Mother and father married in 2010 and share three minor children. The children lived mainly with mother in Florida from 2012 to 2018, when mother and the children moved to Arizona. Father lived mainly in Italy and moved to California in October 2017.

¶4        In 2018, Florida acquired original, continuing jurisdiction over the children under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA) when mother petitioned for dissolution in Florida. As a result, Florida issued a temporary parenting plan granting mother sole legal decision-making and father parenting time as agreed by the parents. The Florida court also established father's child support obligation. While mother's petition for dissolution was still pending in Florida, she and the children moved to Arizona. Father tried to visit the children, but mother consistently denied him access. Because of mother's actions, the Florida court found mother in contempt and awarded father make-up parenting time.

¶5        The Arizona superior court became involved in February 2020, when father tried to register the temporary Florida orders in Arizona.

Father's filings prompted the superior court to hold a UCCJEA conference with the Florida court in July 2020. During the UCCJEA conference, the Florida and Arizona courts agreed Florida would keep jurisdiction until either mother or father registered a final Florida decree in Arizona. At that point, Florida would cede jurisdiction to Arizona. In October 2020, the Florida court entered an "Amended Final Judgment of Dissolution of Marriage," dissolving the marriage and approving the original 2018 parenting plan and child support orders.

¶6　　　　About six months later, on March 2, 2021, father registered the Florida Amended Final Judgment in Arizona. Mother and father began post-decree proceedings. Father filed a motion for temporary orders; an amended petition to modify legal decision-making, parenting time, and child support; and an accelerated request to reinstate parenting time and for hearing on contempt. Mother petitioned to enforce child support, spousal maintenance, and medical expenses.

¶7　　　　In May 2021, the superior court confirmed father had properly registered the Florida Amended Final Judgment and child support orders as of March 2021. The parties agree Arizona acquired UCCJEA and Uniform Interstate Family Support Act jurisdiction at that time.

¶8　　　　The superior court held two hearings in very short order in June 2021: the first on June 17 for father's temporary orders request, and the second just five days later on June 22 for mother's motion for reconsideration of the June 17 temporary orders.

¶9　　　　During the temporary orders hearing, the superior court considered father's accelerated request to reinstate parenting time and contempt. Following the temporary orders hearing, the superior court awarded father temporary sole legal decision-making and ordered the children live with father in California. The superior court awarded mother a weekly 90-minute phone call with the children. The superior court, however, did not find mother in contempt at this hearing.

¶10　　　During the motion for reconsideration hearing, mother did not appear, and father was 24 minutes late. Mother never explained her failure to appear. Father's counsel explained father's late arrival because father was traveling from California and experienced a flight delay. The superior court moved forward with the hearing after finding mother did not show good cause for her absence. The superior court denied mother's motion. The superior court then held mother in contempt for refusing to comply with the June 17, 2021 temporary orders.

¶11          Father then moved to consolidate the trial on all remaining pending matters. The superior court granted the motion and set a July 29, 2021 trial.

¶12          Seven days before the scheduled trial date, mother moved to continue the trial for six months, claiming a medical emergency. The superior court scheduled a status conference to discuss mother's motion. Mother again failed to appear. The superior court proceeded with the status conference, explaining it could not "simply . . . cancel a hearing or change a hearing, or frankly, do anything without credible evidence of a condition." The superior court said it would reserve time at the beginning of the trial to discuss mother's motion to continue and any accommodations.

¶13          On the date of trial, Mother again did not appear. After waiting an hour, the superior court denied mother's motion to continue because mother "unreasonably and unlawfully" withheld the children from father, did not appear at the status conference, did not appear at trial, and filed "unreasonable motions that appeared designed only to delay or disrupt [the] proceedings." The superior court then dismissed mother's petition to enforce child support arrears, spousal maintenance, and medical expenses. The superior court proceeded with the trial on father's petition to modify, the sole remaining unresolved request for relief.

¶14          During the trial, father testified, had a court-appointed advisor (CAA) testify, and offered other evidence. Father's evidence showed mother consistently refused to follow court orders throughout the history of the Florida and Arizona cases. The CAA testified she was concerned about "damage" mother had caused and "will continue" to cause the children. At the end of the trial, the superior court issued temporary orders and took the matter under advisement.

¶15          The superior court then issued a 20-page under-advisement ruling concluding several material changes in circumstances warranted modifying the Florida decree and related orders. The changes included: "conflict and confusion caused by the current Florida orders," and mother's "aggressive alienation activities, . . . unrelenting and baffling defiance of the superior court orders, and . . . unstable and irrational behavior."

¶16          The superior court made extensive findings under A.R.S. §§ 25-403.A, -403.01, -403.03, -403.04, -403.05, and -408.I, and awarded father sole legal decision-making authority and allowed the children to relocate to California to live with father but prohibited father from taking the children

outside the United States. The superior court awarded mother parenting time in California after a time and "with the assistance of a therapeutic intervention or therapy." The superior court said it would consider unsupervised parenting time after mother completed the previously ordered "forensically informed psychological evaluation." The superior court awarded father $421 per month in child support. And though the superior court dismissed mother's petition, it ordered father to pay $118,065.87 in child support arrearages, a ruling father has not appealed.

**¶17**     This court has jurisdiction over mother's timely appeal under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1 and -2101.A.2.

## ANALYSIS

**¶18**     Mother raises several issues on appeal, including jurisdiction, due process, and sufficiency of the evidence. For the first time on appeal, mother also alleges "abusive litigation" by father. We address each issue in turn.

## I.     The superior court acquired UCCJEA jurisdiction on March 2, 2021.

**¶19**     Mother argues the superior court "erred by moving forward with proceedings in Arizona while Florida maintained jurisdiction" over the child custody determination. Mother contends Arizona "did not have jurisdiction to enforce or modify the Florida orders" until the Florida orders had been finalized and "proceedings continu[ed] and a new hearing [was] set in Arizona." Mother is correct. Under the UCCJEA, Florida maintained jurisdiction until March 2, 2021—when jurisdiction transferred to Arizona because father registered Florida's Amended Final Judgment. *See* A.R.S. § 25-1032.A.2. Because the Arizona superior court lacked jurisdiction before March 2, 2021, any substantive Arizona orders entered before that date are a nullity. *See In re Marriage of Dougall*, 234 Ariz. 2, 6 ¶ 12 (App. 2013) (explaining judgments and orders are void if the court entering them lacks jurisdiction) (citation omitted).

**¶20**     As to the June and August 2021 orders, the Arizona superior court obtained jurisdiction on March 2, 2021, after Florida issued the Amended Final Judgment and father registered it in Arizona. At that point, Florida ceded its original jurisdiction to Arizona.

**II.    The superior court did not violate mother's due process or civil rights.**

**¶21**        Mother argues the superior court violated her due process rights (including her civil rights) when it did not grant her motion to continue the August 2021 hearing based on her alleged medical emergency.

**¶22**        Due process gives parties the right to notice of proceedings and the opportunity to present their case. *Cruz v. Garcia*, 240 Ariz. 233, 236 ¶ 11 (App. 2016). The superior court must ensure parties examine witnesses and present evidence in a mode and order "so as to . . . avoid wasting time." Ariz. R. Evid. 611(a)(2); *see also Backstrand v. Backstrand*, 250 Ariz. 339, 347 ¶29 (App. 2020) (explaining courts have discretion to decide "whether additional time is necessary"). This court reviews issues of due process *de novo. Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207 ¶ 6 (App. 2016). This court will reverse a decision based on a due process violation only if the error prejudices a party. *Volk v. Brame*, 235 Ariz. 462, 470 ¶ 26 (App. 2014).

**¶23**        Seven days before the trial, mother moved to continue and the superior court immediately scheduled a status conference, allowing her to appear virtually. When mother did not appear, the superior court said it would reserve time at the beginning of the trial to discuss accommodations including video-appearance, frequent breaks, and changes to how parties object. But mother did not appear at the trial, once again missing any opportunities to discuss any potential accommodation.

**¶24**        On this record, mother has not shown the superior court abused its discretion when it denied her motion to continue and held the trial in her absence. Because mother had proper notice and two opportunities to discuss her motion, the superior court did not violate mother's due process rights.

**¶25**        Lastly, mother argues the superior court denied her due process when it did not enforce earlier child support orders, though she "had been trying for years" to secure enforcement. But the superior court did not acquire jurisdiction until March 2, 2021. And even though the superior court dismissed mother's petition to enforce when mother did not appear for the trial, the superior court entered a child-support-arrearage judgment of $118,065.87 in her favor, granting mother the very relief she sought. On this record, mother has shown no denial of her due process or civil rights.

III. **Sufficient evidence supports the superior court's findings and orders.**

¶26        Mother argues the superior court erred for two reasons: (1) it did not consider certain evidence; and (2) it relied on fraudulent evidence.

¶27        This court will affirm a superior court ruling on legal decision-making and parenting time unless the superior court abused its discretion. *See Ertl v. Ertl*, 252 Ariz. 308, 315 ¶ 25 (App. 2021). The superior court acts within its discretion if substantial evidence supports its judgment. *See Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009). This court reviews *de novo* the sufficiency of evidence but does not reweigh conflicting evidence or redetermine the preponderance of evidence. *See State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011); *Hurd*, 223 Ariz. at 52 ¶ 16. And because the superior court is in the best position to determine witness credibility and resolve conflicting evidence, this court generally defers to its findings. *See Vincent v. Nelson*, 238 Ariz. 150, 155 ¶ 18 (App. 2015).

A. **Sufficient evidence supports the superior court's findings father did not engage in domestic violence or use illicit drugs.**

¶28        Mother argues the superior court erred by disregarding father's alleged domestic violence and failure to complete drug testing.

¶29        As to father's alleged domestic violence, mother claims the superior court ignored evidence she provided, including a Department of Child Safety investigation, the children's statements, and Florida orders of protection. The superior court considered mother's allegation father committed domestic violence and reviewed the evidence as required by statute. *See* A.R.S. § 403.03.B, .C. But mother did not appear at the July 29, 2021 trial and presented no evidence. The superior court heard testimony from father and the CAA who investigated mother's claims. Father denied all domestic violence allegations, and the CAA reported no evidence supporting mother's claims. The superior court also considered the lack of domestic violence allegations in mother's July 2017 petition for dissolution. This record does not support mother's argument that the superior court erred in disregarding evidence of father's alleged domestic violence. On this record, sufficient evidence supported the superior court's finding father had not committed domestic violence against mother. *See Hurd*, 223 Ariz. at 52 ¶ 16.

¶30        As to father's alleged drug use, mother argues the superior court should have found father "guilty of [illicit] drug use" because he did

not follow an order for hair follicle testing. Mother cites no authority to support her argument.

¶31        If the superior court "determines that a parent has abused drugs or alcohol or has been convicted of [specific] drug offense[s,]" it must apply "a rebuttable presumption that sole or joint legal decision-making by that parent is not in the child's best interests." A.R.S. § 25-403.04.A. In considering whether a parent has rebutted that presumption, the superior court must at least consider: (1) "[t]he absence of any conviction of any other drug offense during the previous five years"; (2) "[r]esults of random drug testing for a six month period that indicate that the person is not using drugs as prescribed by title 13, chapter 34"; and (3) "[r]esults of alcohol or drug screening provided by a facility approved by the department of health services." A.R.S. § 25-403.04.B.

¶32        The record contains no evidence of father's drug use or any relevant convictions. And though mother alleges she had tried for years to bring forward his drug-use, she offered no evidence beyond her own allegations to show her attempts or father's alleged drug use. True, father did not complete the court-ordered hair follicle test, but he did complete a urine test which showed only use of marijuana—legal in Arizona at the time. No other evidence showed any history of illicit drug-use or drug-offense convictions. Mother has not shown the superior court abused its discretion or otherwise erred in applying A.R.S. § 25-403.04.

### B.        Mother has shown no fraud or perjury.

¶33        Mother argues the superior court relied on fraudulent evidence of father's failure to complete a hair follicle test, the CAA report, and her credibility.

¶34        First, mother argues father's counsel committed fraud on the court by lying to the superior court to avoid completing a hair follicle test. Fraud on the court occurs "[w]hen a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court." *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299 ¶ 42 (App. 2011).

¶35        Mother bases her argument on the conclusion father's attorney intended to mislead the superior court by saying father was late for the motion for reconsideration hearing because his flight was delayed when, instead, father was drug testing. But Mother offered no evidence relevant to this argument or how it was fraudulent. To be sure, the record shows father arrived 24 minutes late for the hearing and took a urine test

about 30 minutes before the originally scheduled time. Mother, however, has shown no fraud on the court.

¶36    Second, mother argues the superior court erred because it "adopted the majority of the [CAA's report]" and the report, she argues, was based mainly on "perjured testimony" from father and information from father's counsel.[1] Mother also argues the superior court erred by ignoring testimony her own expert witness gave at the June 2021 hearing. Though the superior court did not reference mother's expert in the final orders, the superior court had the discretion to disregard the expert's earlier testimony at a different hearing. *See Vincent*, 238 Ariz. at 155 ¶ 18. Moreover, mother's expert did not testify at trial, and because mother did not appear at trial, she did not ask the superior court to consider the expert's earlier testimony.

¶37    Third, mother argues the superior court should have adopted, or been bound by, the Florida court's credibility findings. She provides no authority supporting this argument. And on the record presented, in essence, mother asks this court to reweigh the evidence and judge the credibility of witnesses, something this court will not do. *See Hurd*, 223 Ariz. at 52 ¶ 16; *Vincent*, 238 Ariz. at 155 ¶ 18.

¶38    On this record, mother has shown no fraud or perjury.

## IV. Mother waived any "abusive litigation" claim.

¶39    Mother argues father engaged in—and the superior court allowed—abusive litigation. Mother says father and the superior court made defamatory, prejudicial, and biased remarks about her. She also argues the superior court caused her harm by ignoring her medical emergency when it denied her motion to continue. Mother did not support any argument that father engaged in sanctionable conduct or that the superior court acted improperly.

¶40    Even if mother's "abusive litigation" claim is an "abuse-of-process" claim, that claim fails on the merits. Abuse of process, an independent tort claim, is a willful act in the use of judicial process for an ulterior purpose not proper in the regular conduct of the proceedings.

---

[1] One day before this court conferenced this case, mother filed a "Motion to Supplement the Record/Request to Take Judicial Notice of Formal Complaint Against Court-Appointed Advisor Holly K. Judge in FC2020-093239," attaching eight emails and one letter. This court, in its discretion, denies mother's request to take judicial notice. Ariz. R. Evid. 201(c), (f).

*Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 257 ¶ 11 (App. 2004); *see also Nienstedt v. Wetzel*, 133 Ariz. 348, 353 (App. 1982). Mother did not raise abuse of process in her petition, did not modify her petition to include such a claim, and did not appear at trial and seek to raise such a claim. Because she did not properly raise an abuse-of-process claim, she has waived it on appeal. *See BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 594 ¶ 25 (App. 2021) (explaining parties waive issues on appeal if the superior court had no opportunity to address the merits of the issue).

## ATTORNEY FEES AND COSTS

**¶41**        Father and mother request attorney fees and costs under ARCAP 21 and A.R.S. § 25-324. This court exercises its discretion and declines to award father his attorney fees. *See* A.R.S. § 25-324.A. Mother, a self-represented party, is ineligible for attorney fees. *See Munger Chadwick, P.L.C. v. Farwest Dev. and Constr. Of the Sw., LLC*, 235 Ariz. 125, 126 ¶ 5 (App. 2014). As the prevailing party, we award father his costs upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

## CONCLUSION

**¶42**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA